IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY J. ATKINS
   a/k/a Tony Atkins
SAMUEL D. COBB
   a/k/a Sam Cobb
and
BRUCE A. HOULE
_____/

SEALED
INDICTMENT

3:16cr96-MCR

THE GRAND JURY CHARGES:

COUNT ONE

A. INTRODUCTION

At all times material to this Indictment:

1.     GulfSouth Private Bank ("GulfSouth") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and was located in the Northern District of Florida. On or about October 19, 2012, the Florida Office of Financial Regulation closed GulfSouth and the FDIC was named receiver.

2.     Gulf Coast Community Bank was a financial institution, the deposits of which were insured by the FDIC.

3.     Beginning in or about November 2005, and continuing through on or

about February 1, 2012, defendant **ANTHONY J. ATKINS, a/k/a "Tony Atkins,"** was GulfSouth's president and chief executive officer.

4. Beginning in or about November 2005, and continuing through on or about December 5, 2011, defendant **SAMUEL D. COBB, a/k/a "Sam Cobb,"** was a vice president at GulfSouth.

5. E.A.C. was an agent of Midnight Properties, L.L.C. ("Midnight Properties") and CDG, L.L.C. ("CDG").

6. Defendant **ANTHONY J. ATKINS** and Michael Bradley Bowen were agents of C-Note Development Company, L.L.C. ("C-Note") a land and timber procurement business.

7. Defendant **ANTHONY J. ATKINS** was Michael Bradley Bowen's brother-in-law.

8. Defendant **ANTHONY J. ATKINS** and R.M.C. were agents of The Highlands on Lake Eufaula, L.L.C. ("Highlands on Lake Eufaula").

9. Defendant **SAMUEL D. COBB** and Mark W. Shoemaker were agents of Burnt Pine Properties, L.L.C. ("Burnt Pine Properties").

10. In or about July 2006, defendant **ANTHONY J. ATKINS** and R.M.C., as agents of Highlands on Lake Eufaula, signed a warranty deed conveying a parcel of land identified as Lot 9 in Henry County, Alabama ("Lot 9") to Burnt Pine Properties.

11. In or about August 2007, defendant **SAMUEL D. COBB** and Mark W. Shoemaker, as members of Burnt Pine Properties, signed a warranty deed conveying Lot 9 at the Highlands on Lake Eufaula to Shoemaker.

12. Defendant **BRUCE A. HOULE** was an agent of BAH DEV, LLC ("BAH").

13. William Blake Cody and W.H.C. were agents of C&C Holdings, L.L.C. ("C&C Holdings").

14. William Blake Cody and R.M.C. were agents of Global Southern Resources, L.L.C. ("Global Southern").

15. The condominium known as Mediterra located at 17359 Perdido Key Drive, Pensacola, Florida, was located in the Northern District of Florida.

16. Between in or about December 2005, and in or about February 2008, Mediterra Unit 902-E was held in the name of CDG and Mediterra Units 1001-W and 1002-E were held in the name of Midnight Properties.

17. On or about December 13, 2005, E.A.C., as agent for Midnight Properties and CDG, obtained loans totaling approximately $3,437,500 from GulfSouth, which were secured by Mediterra units 902-E, 1001-W, and 1002-E.

18. In or about January 2008, Gulf Coast Community Bank obtained a judgment against E.A.C. and Midnight Properties and thereafter recorded the judgment in Escambia County; the judgment had the effect of encumbering

Mediterra Units 1001-W and 1002-E.

## B.  THE CHARGE

Between on or about December 1, 2007, and on or about December 1, 2011, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
**SAMUEL D. COBB,**
a/k/a Sam Cobb,
and
**BRUCE A. HOULE,**

did knowingly and willfully conspire, combine, confederate, and agree together and with other persons to knowingly and willfully execute and attempt to execute a scheme to obtain moneys, funds, and credits owned by and under the custody and control of GulfSouth, a federally-insured financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344(2).

## C.  MANNER AND MEANS

It was part of the scheme to defraud that:

1.  In or about 2007, E.A.C., who was unable to repay the Mediterra mortgage loans and was facing the prospect of bankruptcy, offered to deed the Mediterra units to GulfSouth.  Defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** declined the offer and instead devised a scheme to conceal

4

the fact that the Mediterra loans were in default by using GulfSouth's own funds to pay off the Mediterra loans.

2. In or about February 2008, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** solicited Mark W. Shoemaker, Michael Bradley Bowen, and defendant **BRUCE A. HOULE** to purchase Mediterra units 902-E, 1001-W, and 1002-E, respectively. As a part of the solicitation, **ATKINS** and **COBB** offered to approve loans and lines of credit from GulfSouth in amounts greater than what was owed by E.A.C. on the respective condominium units. **ATKINS** and **COBB** represented that the lines of credit could be used by Shoemaker, Bowen, and **HOULE** to pay the interest and various costs associated with the condominium units.

3. To persuade Mark W. Shoemaker, Michael Bradley Bowen, and defendant **BRUCE A. HOULE** to participate in this scheme, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** represented to Shoemaker, Bowen, and **HOULE** that the loans and lines of credit issued by GulfSouth for the purchase of the Mediterra properties would be non-recourse, meaning that if Shoemaker, Bowen and **HOULE** defaulted, GulfSouth would have no recourse against the men.

4. In reliance on the representations made by defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB,** Mark W. Shoemaker, Michael Bradley

5

Bowen, and defendant **BRUCE A. HOULE** agreed to obtain mortgage loans and lines of credit from GulfSouth for the purpose of purchasing Mediterra units 902-E, 1001-W, and 1002-E.

5. In order to clear the title to units 1001-W and 1002-E and to enable the sale of the properties, defendant **ANTHONY J. ATKINS** falsely told a representative of Gulf Coast Community Bank that Mediterra units 1001-W and 1002-E were going to be sold in short sales; in reliance on **ATKINS'** representation, Gulf Coast Community Bank released its judgment lien on Mediterra units 1001-W and 1002-E.

6. On or about February 11, 2008, Mark W. Shoemaker, as an individual, Michael Bradley Bowen, as a representative of C-Note, and defendant **BRUCE A. HOULE**, as a representative of BAH, entered into contracts with E.A.C. to purchase Mediterra units 902-E, 1001-W, and 1002-E, respectively. Thereafter, Shoemaker, Bowen, and **HOULE** submitted loan application documents to GulfSouth to obtain loans to purchase the respective Mediterra units.

7. In or about February 2008, as a part of the scheme, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** caused a total of approximately $3,821,450 in loans to be issued by GulfSouth for Mediterra units 902-E, 1001-W and 1002-E to Mark W. Shoemaker, Michael Bradley Bowen, and defendant **BRUCE A. HOULE**, respectively. That is, a total of $1,153,000 in

loans were issued to Shoemaker which consisted of a loan for $868,000 secured by Mediterra unit 902-E, a loan for $205,000 secured by Lot 9 at the Highlands on Lake Eufaula, and an unsecured line of credit for $80,000. A total of $1,314,250 in loans were issued to Bowen, as a representative of C-Note, which consisted of a loan for $1,114,250 secured by Mediterra unit 1001-W, and an unsecured line of credit for $200,000. And, a total of $1,354,200 in loans were issued to **HOULE**, as a representative of BAH, which consisted of a loan for $1,064,200 secured by Mediterra unit 1002-E, and an unsecured line of credit for $290,000.

8.   On or about February 15, 2008, as part of their scheme to make it appear that the Mediterra mortgage loans were performing, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** caused U.S. Department of Housing and Urban Development Settlement Statement, Form HUD-1s ("HUD-1") to be prepared in connection with the loans issued by GulfSouth to Mark W. Shoemaker, Michael Bradley Bowen, and defendant **BRUCE A. HOULE**. The HUD-1s falsely stated that Shoemaker, Bowen, and **HOULE**, provided cash for their respective transactions, when in truth and fact, the amounts listed as "cash from borrower" on these HUD-1s, was money provided by GulfSouth.

9.   Beginning in or about July 2008, defendant **ANTHONY J. ATKINS** solicited William Blake Cody to purchase Mediterra unit 1001-W from **ATKINS'** brother-in-law, Michael Bradley Bowen. **ATKINS** offered to authorize loans

7

from GulfSouth to Cody for more than the amount owed on the condominium unit. **ATKINS** also offered to authorize a line of credit from GulfSouth to be used by Cody to pay interest and various costs associated with the condominium unit. To persuade Cody to make the purchase, **ATKINS** told Cody that the loans would be non-recourse.

10. In or about October 2008, William Blake Cody, as a representative of C&C Holdings, entered into a contract with Michael Bradley Bowen, as a representative of C-Note, to purchase Mediterra unit 1001-W for $1,360,000. Thereafter, Cody submitted loan application documents to GulfSouth to obtain loans for the condominium unit.

11. In or about October 2008, as a part of the scheme, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** caused a total of approximately $1,452,000 in loans to be issued by GulfSouth to William Blake Cody for Mediterra unit 1001-W. That is, a loan for $1,292,000 secured by Mediterra unit 1001-W, and an unsecured line of credit for $160,000 were issued.

12. On or about October 16, 2008, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** caused a HUD-1 to be prepared for the loan issued to William Blake Cody, as a representative of C&C Holdings. The HUD-1 falsely stated that Cody, as borrower, and Michael B. Bowen, as seller, provided cash for the closing, when in truth and fact, the amount listed as "cash from borrower" and

"cash from seller," totaling approximately $82,098, was provided by K.W., a third party solicited by **ATKINS** and Cody. To persuade K.W. to provide the money for Cody's closing, **ATKINS** promised K.W. he would be reimbursed from GulfSouth funds.

13. On or about September 25, 2009, GulfSouth received $7,500,000 in Troubled Asset Relief Program ("TARP") funds from the United States Treasury. Thereafter, defendants **ANTHONY J. ATKINS** and **SAMUEL D. COBB** allowed the three Mediterra condominiums to be sold in short sales, resulting in a loss to GulfSouth. Further, **ATKINS** and **COBB** allowed the lines of credit to be charged off of GulfSouth's books and records.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### A. INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through C13 of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about February 15, 2008, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
and
**SAMUEL D. COBB,**
a/k/a Sam Cobb,

did knowingly make a false statement and report for the purpose of influencing the action of GulfSouth, an institution the accounts of which were insured by the FDIC, upon an application, purchase, and loan; namely, the defendants knowingly submitted a fraudulent HUD-1 that falsely represented that Mark W. Shoemaker had provided $266,339 in cash funds as the borrower as part of the closing on a loan for the purchase of Mediterra unit 902-E, whereas, in truth and in fact, as the defendants well knew, the cash that was falsely reported as being provided by Shoemaker as borrower was from the proceeds of other lines of credit, and knowingly submitted a fraudulent security agreement that falsely represented that Shoemaker was obligated to repay the loan.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT THREE

### A.  INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through C13 of Count One are incorporated by reference as if fully set forth herein.

## B. THE CHARGE

On or about February 15, 2008, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
and
**SAMUEL D. COBB,**
a/k/a Sam Cobb,

did knowingly make a false statement and report for the purpose of influencing the action of GulfSouth, an institution the accounts of which were insured by the FDIC, upon an application, purchase, and loan; namely, the defendants knowingly submitted a fraudulent HUD-1 that falsely represented that Michael Bradley Bowen, as representative of C-Note, had provided $182,270.19 in cash funds as the borrower as part of the closing on a loan for the purchase of Mediterra unit 1001-W, whereas, in truth and in fact, as the defendants well knew, the cash that was falsely reported as being provided by Bowen as borrower was from the proceeds of another line of credit, and knowingly submitted a fraudulent security agreement that falsely represented that Bowen was obligated to repay the loan.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FOUR

## A. INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through

11

C13 of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about February 15, 2008, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
**SAMUEL D. COBB,**
a/k/a Sam Cobb,
and
**BRUCE A. HOULE,**

did knowingly make a false statement and report for the purpose of influencing the action of GulfSouth, an institution the accounts of which were insured by the FDIC, upon an application, purchase, and loan; namely, the defendants knowingly submitted a fraudulent HUD-1 that falsely represented that defendant **BRUCE A. HOULE**, as representative of BAH, had provided $232,254.74 in cash funds as the borrower as part of the closing on a loan for the purchase of Mediterra unit 1002-E, whereas, in truth and in fact, as the defendants well knew, the cash that was falsely reported as being provided by **HOULE** as borrower was from the proceeds of another line of credit, and knowingly submitted a fraudulent security agreement that falsely represented that **HOULE** was obligated to repay the loan.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIVE

### A. INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through C13 of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

On or about October 16, 2008, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
and
**SAMUEL D. COBB,**
a/k/a Sam Cobb,

did knowingly make a false statement and report for the purpose of influencing the action of GulfSouth, an institution the accounts of which were insured by the FDIC, upon an application, purchase, and loan; namely, the defendants knowingly submitted a fraudulent HUD-1 that falsely represented that William Blake Cody, as representative of C&C Holdings, had provided $56,813.54 in cash funds as the borrower as part of the closing on a loan for the purchase of Mediterra unit 1001-W, and that William Bradley Bowen, as representative of C-Note, had provided $25,285.02 in cash funds as the seller, whereas, in truth and in fact, as the defendants well knew, the cash that was falsely reported as being provided by Cody as borrower, and Bowen as seller was from K.W., and knowingly submitted

13

a fraudulent security agreement that falsely represented that **HOULE** was obligated to repay the loan.

In violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT SIX

### A. INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through C13 of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about February 1, 2008, and on or about May 5, 2008, in the Northern District of Florida and elsewhere, the defendants,

**ANTHONY J. ATKINS,**
a/k/a **Tony Atkins,**
and
**SAMUEL D. COBB,**
a/k/a **Sam Cobb,**

did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, Gulf Coast Community Bank, by means of materially false and fraudulent pretenses, representations, and promises, by falsely representing to Gulf Coast Community Bank that Mediterra units 1001-W and 1002-E were going to be sold in short sales.

In violation of Title 18, United States Code, Sections 1344(1) and 2.

## COUNT SEVEN

### A. INTRODUCTION

The allegations contained in paragraphs A1 through A18, and C1 through C13 of Count One are incorporated by reference as if fully set forth herein.

### B. THE CHARGE

Between on or about November 15, 2011, and on or about November 28, 2011, in the Northern District of Florida and elsewhere, the defendant,

**ANTHONY J. ATKINS,**
**a/k/a Tony Atkins,**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice for disposing of a loan by means of false and fraudulent pretenses, representations, and promises related to a material fact, and for the purpose of executing and in order to effect the scheme and artifice to dispose of an obligation, did cause to be sent, delivered, and moved by United States Postal Service, and by any private and commercial interstate carrier, a Full Satisfaction of Mortgage and Security Agreement for the GulfSouth mortgage on Lot 9 at the Highlands on Lake Eufaula, thereby affecting a financial institution.

In violation of Title 18, United States Code, Sections 1341 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From their engagement in the violations alleged in Counts One through Seven of this Indictment, the defendants,

**ANTHONY J. ATKINS,**
a/k/a Tony Atkins,
**SAMUEL D. COBB,**
a/k/a Sam Cobb,
and
**BRUCE A. HOULE,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a), any and all of the defendants' right, title, and interest in any property real and personal, constituting and derived from, proceeds obtained, directly and indirectly, as a result of such violations.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i. cannot be located upon the exercise of due diligence;

    ii. has been transferred, sold to, or deposited with a third party;

    iii. has been placed beyond the jurisdiction of this Court;

    iv. has been substantially diminished in value; or

    v.      has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

A TRUE BILL:

_Redacted per privacy policy_
Deputy FOREPERSON

12-6-16
DATE

CHRISTOPHER P. CANOVA
United States Attorney

TIFFANY H. EGGERS
Assistant United States Attorney

17